UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
PEEQ MEDIA, LLC,                                      :
                                                     :
                                  Plaintiff,         :
                                                     :        16-CV-5292 (JPO)
                    -v-                               :
                                                     :        OPINION AND ORDER
JOE BUCCHERI and JEFFREY REARDON,                    :
                                                     :
                                  Defendants.        :
-------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

On June 1, 2016, Peeq Media, LLC ("Peeq") filed this action in the Supreme Court of

New York, County of New York, against Joe Buccheri and Jeffrey Reardon (collectively

"Defendants"), alleging that the former breached his fiduciary duty and duty of loyalty to Peeq

and the latter aided and abetted him in his breach, helping Buccheri misappropriate proprietary

information for use by Coloredge, Inc. ("Coloredge"), a competitor of Peeq.  (Dkt. No. 1-1

("Compl.").)

On July 5, 2016, Defendants removed the action to this Court, pursuant to 28 U.S.C.

§ 1441, based on complete diversity of citizenship of the parties.  (*See* Dkt. No. 1.)  Several days

later, Defendants moved to dismiss the action for lack of personal jurisdiction under Federal

Rule of Civil Procedure 12(b)(2) and improper venue under Rule 12(b)(3).  (Dkt. No. 5.)  For the

reasons that follow, the motion is denied.

I.      **Background**

The following facts are taken from the Complaint and are presumed true for the purposes

of this motion.

Plaintiff Peeq is a Delaware limited liability company with its principal office in New

York.  (Compl. at 1.)  Because the Plaintiff LLC's sole member is alleged to be an individual who is a citizen of Virginia, and Defendants are both alleged to be citizens of New Jersey, there is complete diversity under 28 U.S.C. § 1332.  Peeq provides digital, print, and multi-media production services to companies, including managing advertisements and other images.  (*Id.* at 1-2.)

Defendant Jeffrey Reardon worked at Peeq from the company's start, and, beginning in January 2008, served as its Chief Information Officer.  (*Id.* at 2.)  In October 2013, Reardon resigned from Peeq and, in early 2014, he took a job as Director of Technology Services at a creative production agency called Coloredge, Peeq's "direct competitor."  (*Id.*)

While Reardon worked at Peeq and after his departure, Verizon was one of Peeq's "key customer[s]," and Peeq "spent more than seven years and millions of dollars" to develop and improve upon a suite of software applications and platforms (collectively the "Verizon Portal" or "Portal") for the account  (*Id.* at 2-3.)  The Portal was used to provide Verizon-branded printed material (such as brochures and price cards) to retailers and to enable Verizon personnel to manage advertising print jobs.  (*Id.* at 3.)  One part of the Portal, the "VZW Retail Engine," contained product descriptions and prices so that Verizon could easily manage the content and distribution of Verizon "call-out cards."  (*Id.*)  Pursuant to Peeq's "Employment Agreement" with its employees, the Portal, including the VZW Retail Engine, belonged to Peeq.  (*Id.* at 4.)

Peeq alleges that after his departure from the company, Reardon contacted Silicon Publishing, Inc. to set up a software application like VZW Retail Engine in order to help Coloredge "solicit Verizon's business."  (*Id.*)  Peeq contends that Reardon set up phone calls with Silicon Publishing to explain the details of the platform he envisioned.  (*Id.*)  Before those calls took place, Peeq claims that Reardon contacted Defendant Joe Buccheri—at the time a sales

representative at Peeq who spent a "substantial portion" of his time on the Verizon account—to "request that he take part in [the] calls." (*Id.* at 1-2, 5.) While Buccheri was employed at Peeq and continued to be involved with maintaining Verizon's account there, he participated in multiple calls with Silicon Publishing organized by Reardon. (*Id.* at 5.) (The idea, Peeq contends, was that Buccheri would ultimately jump ship to Coloredge. (*Id.*)) During these calls, Buccheri allegedly "described the specifications, interface design and functionality of Peeq's VZW Retail Engine," all of which he learned through his work at Peeq, while representing that he was "somehow affiliated with Verizon as an employee or consultant." (*Id.*)

Silicon Publishing ultimately developed for Coloredge a call-out card application that allowed Coloredge to service Verizon. (*Id.* at 6.) The application could not have come into being, Peeq argues, without Buccheri's knowledge of Peeq's Platform, which he gleaned through his work at the company in its New York headquarters, through remote log-in, and from his frequent communication with employees based in the New York office. (Dkt. No. 12 at 4, 7.) Peeq further alleges that, under the terms of his employment (as evidenced by the employee handbook), Buccheri was aware that the Platform was "the sole and exclusive property of Peeq," and that he had a duty not to "divert" business from or "interfere" with Peeq. (Compl. at 3, 6.) As a result, Peeq asserts against Buccheri a claim for breach of fiduciary duty and duty of loyalty to Peeq. (*Id.* at 6-7.) Peeq alleges that that Reardon aided and abetted Buccheri by providing "substantial assistance and encouragement." (*Id.* at 7.)

## II.  Personal Jurisdiction

"[T]he plaintiff bears the burden of establishing personal jurisdiction." *Karoon v. Credit Suisse Grp. AG*, No. 15 Civ. 4643, 2016 WL 815278, at *2 (S.D.N.Y. Feb. 29, 2016) (Oetken, J.) (alteration in original) (quoting *Cortlandt St. Recovery Corp. v. Deutsche Bank AG, London*

*Branch*, No. 14 Civ. 1568, 2015 WL 5091170, at *2 (S.D.N.Y. Aug. 28, 2015)).  To survive a

motion to dismiss for lack of personal jurisdiction, a plaintiff "need only make a *prima facie*

showing of personal jurisdiction."  *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163

(2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)).  "A

*prima facie* case for personal jurisdiction involves three elements: '(1) proper service of process

upon the defendant; (2) a statutory basis for personal jurisdiction; and (3) accordance with

constitutional due process principles.'"  *Karoon*, 2016 WL 815278, at *2 (quoting *Reich v.*

*Lopez*, 38 F. Supp. 3d 436, 454 (S.D.N.Y. 2014)).  "Plaintiffs can make such a showing through

the submission of affidavits and supporting materials that contain "an averment of facts that, if

credited, would suffice to establish jurisdiction over the defendant."  *Id.* (quoting *Cortlandt St.*

*Recovery Corp.*, 2015 WL 5091170, at *2).  Courts "construe the pleadings and affidavits in the

light most favorable to plaintiffs, resolving all doubts in their favor."  *Chloé*, 616 F.3d at 163

(quoting *Porina*, 521 F.3d at 126).

A court may exercise specific or general personal jurisdiction over a defendant.  *Daimler*

*AG v. Bauman*, 134 S. Ct. 746, 754 (2014).  Peeq alleges that the Court has specific jurisdiction

over Defendants.  Specific jurisdiction subjects a defendant to suit only on claims that "arise

from conduct related to the forum."  *Cortlandt St. Recovery Corp.*, 2015 WL 5091170, at *2.  In

diversity cases, like this one, "a federal court's personal jurisdiction is determined by the law of

the state in which the district is located."  *Karoon*, 2016 WL 815278, at *2 (quoting *Reich*, 38 F.

Supp. 3d at 545).  To determine whether it has personal jurisdiction over Defendants, the Court

therefore looks to the law of New York.  The Court next determines "whether the exercise of

personal jurisdiction is consistent with due process."  *Id.* (citing *Daimler*, 134 S. Ct. at 751).

A.      **New York Law**

The New York long-arm statute provides for jurisdiction over a non-domiciliary where (1) the defendant "in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state," so long as (2) the cause of action "aris[es] from" that business transaction.  N.Y. C.P.L.R. § 302(a)(1); *Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 (2d Cir. 2012).

Buccheri, Peeq alleges, worked in New York for Peeq at the time of the conduct at issue here.  But Buccheri argues that he did not transact business in New York sufficient to establish personal jurisdiction because he largely worked from his New Jersey home and "travelled to New York for Peeq business . . . approximately 3 to 4 times per month."  (Dkt. No. 6 at 2.) Further, he contends that the conduct at issue has no relationship to his New York visits: Verizon is headquartered in New Jersey and Silicon Publishing is based in California.  (*Id.*)  Buccheri's protests are unavailing.

With respect to Section 302(a)(1)'s first prong, Peeq alleges sufficient facts that Buccheri transacted business in New York.

Courts in this District have held that out-of-state employees who typically (even exclusively) work from home "transacted business in New York" within the meaning of N.Y. C.P.L.R. § 302(a)(1).  Where an employee "ma[kes] his living by working for a New York-based company," *LeCroy Corp. v. Hallberg*, No. 09 Civ. 8767, 2010 WL 3958761, at *3 (S.D.N.Y. Oct. 4, 2010), working from home does not undermine that employee's New York contacts where "21st-Century technology" enables him to maintain consistent contacts with his employer over email, phone, and remote log-on to the company's servers, *Opticare Acquisition Corp. v. Castillo,* 806 N.Y.S.2d 84, 90 (N.Y. App. Div. 2d Dep't 2005).  *See Mercator Risk Services Inc.*

*v. Girden*, No. 08 Civ. 10795, 2008 WL 5429886, at * 3 (S.D.N.Y. Dec. 30, 2008) (holding that

an out-of-state employee of a New York company met the statutory requirement because the

employee had "interacted with their employer's New York headquarters, accessed data

maintained by their employer in New York, availed themselves of the benefit of being employed

by a New York company, and generated profits for a New York company"); *Olympus Am., Inc.*

*v. Fujinon, Inc.*, 8 A.D.3d 76, 77 (N.Y. App. Div. 1st Dep't 2004) (finding that an out-of-state

employee had "project[ed] himself into local commerce by generating sales between the New

York headquarters and the customers in his territories through the phone calls and e-mails he

regularly made or sent to New York").

Consistent with this line of cases, Peeq alleges that Buccheri not only traveled to New

York "regularly, including for sales meetings, and whenever requested by Peeq executives," but

also routinely "access[ed] Peeq's email server and log[ged] in remotely into the web-based

software applications used to service Verizon, all of which were located in Peeq's New York

offices."  (Dkt. No. 12 at 4.)  Moreover, Buccheri had "continuous communications, by phone

and email, with other Peeq employees at the New York offices, Peeq's web developers for the

applications used to service Verizon, and individuals at the production and printing facilities in

New York."  (*Id.*)  Given the many signals that Buccheri's work for Peeq transpired physically

and virtually in New York, Buccheri's suggestion that he "only occasionally travel[ed] to New

York for reasons wholly unrelated to Plaintiff's claims" is unpersuasive.  (Dkt. No. 6 at 1.)

Section 302(a)(1)'s second prong is also satisfied because the cause of action at issue

here arises from Buccheri's New York business contacts.

To satisfy the statutory requirement that the action "aris[e] from" business contacts in

New York, courts require "'some articulable nexus between the business contacts and the cause

of action sued upon' which amounts to 'a substantial relationship to the transaction out of which the instant cause of action arose.'"  *AVRA Surgical Robotics*, 41 F. Supp. 3d at 359 (quoting *McGowan v. Smith*, 419 N.E.2d 321, 323 (N.Y. 1981)).  The requirement is satisfied "unless 'the event giving rise to the plaintiff's injury had . . . a tangential relationship to any contacts the defendant had with New York.'"  *Chloé*, 616 F.3d at 167 (quoting *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 104 (2d Cir. 2006)).  To that end, courts in this District have held that the "nexus" requirement is satisfied where a defendant's New York contacts involved learning information that formed the basis of a claim regarding the "alleged [mis]use of this information."  *LeCroy Corp.*, 2010 WL 3958761, at *4.  Here, Peeq has adequately alleged that Buccheri's New York contacts are related to the instant action because, as described above, his contacts with the company, its servers and platforms, and its employees were the means through which he learned about and interacted with the proprietary Verizon Platform.  (Dkt. No. 12 at 4.)

Additionally, an alleged breach of a duty to a New York-based employer has been held to satisfy the long-arm statute's "nexus" requirement.  *See, e.g.*, *LeCroy Corp.*, 2010 WL 3958761, at *4; *Mercator Risk Servs. Inc.*, 2008 WL 5429886, at * 4; *see also DIMON Inc. v. Folium, Inc.*, 48 F. Supp. 2d 359, 364–65 (S.D.N.Y. 1999) ("A cause of action can be said to arise from transaction of business in New York when . . . the New York business . . . [was] essential to the birth of the . . . fiduciary relationship" whose breach is alleged (first alteration in original) (quoting *Nat'l Cathode Corp. v. Mexus Co.,* 855 F.Supp. 644, 647 (S.D.N.Y. 1994))).  As in those cases, Buccheri's fiduciary duty and duty of loyalty—which Peeq alleges he breached in the instant action—derive from an employment agreement with the New York company under New York law.  (Dkt. No. 12-3 at 20-21.)

As regards Reardon, Peeq has made a showing that he "transact[ed] . . . business within the state" sufficient to satisfy N.Y. C.P.L.R. § 302(a)(1).  Under the "business transaction" requirement, Peeq meets the standard discussed above, describing that "Reardon was working full-time in Coloredge's New York office" at the time of the conduct central to this dispute.  (Dkt No. 12-1 ¶ 8.)  To meet the "nexus" requirement, Peeq alleges that the same business that connects Reardon to New York—his position as Director of Technology Services at Coloredge—is the root of the instant action.  That is, Reardon's aiding and abetting of Buccheri's breach of duty "ar[ose] from" his job at Coloredge and wish to woo Verizon to become a client there.  *See Solé Resort, S.A. de C.V.*, 450 F.3d at 104.  Peeq thus makes out a *prima facie* case of personal jurisdiction for Reardon.[1]

**B.      Due Process**

Having found personal jurisdiction under New York law with respect to each Defendant, the Court next turns to constitutional due process.

"To establish personal jurisdiction over a defendant, due process requires a plaintiff to allege (1) that a defendant has certain minimum contacts with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances."  *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168-69 (2d Cir. 2015) (internal quotation marks omitted) (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013)).  Ultimately, the exercise of jurisdiction must "comport with fair play and substantial justice."  *Id.* (quoting *Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 164 (2d Cir. 2013)).

---

[1]      Because the Court finds personal jurisdiction under N.Y. C.P.L.R. § 301(a)(1), it need not address Peeq's argument, in the alternative, that jurisdiction exists over Buccheri and Reardon under N.Y. C.P.L.R § 302(a)(3).

### 1.    Minimum Contacts

In evaluating whether there are sufficient minimum contacts for purposes of the due process inquiry, courts look broadly at the "totality of Defendants' contacts with the forum state." *Chloé*, 616 F.3d at 164.  Sufficient contacts exist "where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Eades*, 799 F.3d at 169 (quoting *Licci*, 732 F.3d at 170).  These contacts need not be extensive; "single or occasional acts of [a] corporate agent . . . may sometimes be enough." *Id.* (quoting *Daimler*, 134 S.Ct.at 754).

Here, the pattern of contact with New York that supports statutory jurisdiction over Buccheri and Reardon also serves to satisfy the due process minimum contacts requirement. Defendants' full-time employment with New York-based Peeq and New York-based Coloredge (even assuming substantial time worked from home) demonstrates that they "purposefully availed" themselves of the "privilege of doing business in the forum."  Such employment relationships evince an expectation that an out-of-state defendant may be haled into court in New York.  *See Mercator Risk Servs., Inc.*, 2008 WL 5429886, at *4 ("Defendants purposely engaged in a major contractual relationship—an employment relationship—with a New York corporation. They purposely . . . earned profits for that corporation, and communicated with that corporation; some of them even traveled to that corporation's headquarters in New York.  As a result, [t]he plaintiff should have reasonably been able to anticipate being haled into court in New York.").[2]  As a result, Defendants' contacts meet the "minimum contacts" requirement.

---

[2]    Buccheri additionally argues that, these contacts notwithstanding, he should not be subject to personal jurisdiction in New York because "[t]he plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014).  But this language is meant to except individuals who have had only "random, fortuitous, or attenuated" contacts with the forum.  *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475

### 2.    Reasonableness

"[W]here the plaintiff has made a threshold showing of minimum contacts at the first stage," a defendant may still show that the court lacks personal jurisdiction by "present[ing] 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (quoting *Burger King Corp.*, 471 U.S. at 477).  But "generalized complaints of inconvenience . . . do not add up to 'a compelling case.'" *Chloé*, 616 F.3d at 173 (internal quotation mark omitted) (quoting *Metro. Life*, 84 F.3d at 568).  As a result, "dismissals resulting from the reasonableness test should be few and far between." *Metro. Life*, 84 F.3d at 575.

To evaluate reasonableness, courts consider, among other things: the burden of litigating in the forum for the defendant; the plaintiff's interest in obtaining relief; the interests of the forum state; and the interstate judicial system's interest in efficient resolution of cases. *Chloé*, 616 F.3d at 164 (citing *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113-14 (1987)).

Peeq argues that both it and the state of New York have a strong interest in resolving the dispute in this jurisdiction because Peeq is based in New York and Defendants allegedly diverted business to a competitor, also based in New York.  (Dkt. No. 12 at 12.)

Defendants, in contrast, do not make arguments about the reasonableness of the forum separate from the minimum contacts question.  Their objection to the reasonableness of this forum thus amounts, at best, to a "generalized complaint[] of inconvenience," rather than a

---

(1985)).  Contrary to Buccheri's contention that his employment at Peeq (the plaintiff here) precludes jurisdiction, the Supreme Court has made clear that a defendant's "status as employee[] does not somehow insulate [him] from jurisdiction" when, as in this case, the contacts as a whole support a finding of jurisdiction. *Calder v. Jones*, 465 U.S. 783, 790 (1984).

specific and "compelling" showing. *Chloé*, 616 F.3d at 173 (quoting *Metro. Life*, 84 F.3d at 568). Defendants have not shown enough to displace Peeq's arguments regarding the reasonableness of the instant forum.

## III. Venue

Defendants also ask that the Court dismiss the action for improper venue, or, in the alternative, transfer the case to the District of New Jersey. (Dkt. No. 6 at 8-9.)

Venue is not improper in this District. This case was removed to this Court from the Supreme Court of New York, County of New York. (Dkt. No. 1.) The removal statute provides for venue in "the district court . . . for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441. Because this case was properly removed, Defendants cannot now challenge venue in this Court as improper. *See Guccione v. Harrah's Mktg. Servs. Corp.*, No. 06 Civ. 4361, 2009 WL 2337995, at *2 n.6 (S.D.N.Y. July 29, 2009) (citing *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 72 (2d Cir. 1998)).

Regarding the alternative request for transfer, district courts consider a number of factors in determining whether transfer is appropriate under 28 U.S.C. § 1404, including: "(1) the plaintiffs choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties." *D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 106–07 (2d Cir. 2006) (alteration in original). Plaintiff's forum choice is given "substantial" weight. *In re Warrick*, 70 F.3d 736, 741 (2d Cir. 1995) (per curiam) (quoting *A. Olinick & Sons v. Dempster Bros., Inc.*, 365 F.2d 439, 444 (2d Cir. 1966)). As such, "the burden is on the moving party . . . to make a 'clear and convincing showing' that transfer is proper." *Hershman*

*v. UnumProvident Corp.*, 658 F. Supp. 2d 598, 600 (S.D.N.Y. 2009) (quoting *Habrout v. City of New York*, 143 F. Supp. 2d 399, 401 (S.D.N.Y. 2001)).

Defendants here rest largely on their arguments regarding personal jurisdiction to challenge Peeq's venue choice.  They argue that Defendants and Verizon are residents of the state of New Jersey, and Silicon Publishing is based in California.  (Dkt. No. 6 at 8-9.)  However, given the considerable deference given to a plaintiff's choice of venue and the fact that a substantial part of the operative facts giving rise to the claim occurred in New York, which is where relevant witnesses and documents are likely to reside, Defendants have not made a clear and convincing showing that transfer to New Jersey is justified in this case.

## IV.    Conclusion

For the foregoing reasons, Defendants' motion to dismiss for lack of personal jurisdiction, or to dismiss or transfer for improper venue, is DENIED.

The Clerk of Court is directed to close the motion at Docket Number 5.


SO ORDERED.


Dated: October 13, 2016
       New York, New York


                                                    J. PAUL OETKEN
                                                    United States District Judge